UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:12-CR-14-TLS |
| | ) | |
| KENNETH SCHAMBERS | ) | |

**OPINION AND ORDER**

The Defendant, Kenneth Schambers, is scheduled to be sentenced on May 22, 2013. This Opinion and Orders addresses the Defendant's request for a below guidelines sentence.

**A.     Background**

On February 22, 2012, a Fort Wayne Grand Jury returned a single count Indictment [ECF No. 1] against the Defendant, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Defendant executed a written Plea Agreement on June 26, 2012 in which pled guilty to the single count of the Indictment. (Plea Agreement ¶ 8(a), ECF No. 20.) The parties agreed that (1) the Defendant was entitled to a two-level reduction in the offense level for acceptance of responsibility and, if eligible, for an additional one-level reduction and (2) the Government would recommend at sentencing that the Court should impose the minimum of the applicable guideline range. (*Id.* ¶ 8(c).) On June 28, 2012, the Defendant officially entered his plea of guilty at his change of plea hearing.

A Draft Presentence Investigation Report [ECF No. 28] was subsequently prepared by the probation officer and filed with the Court on September 20, 2012. The Defendant filed his Objection to the Draft Presentence Investigation Report [ECF No. 31] on October 9, 2012. On the same day, the Government filed a Notice of No Objection [ECF No. 32]. The probation

officer completed a Final Presentence Investigation Report [ECF No. 33] and submitted it to the Court on October 15, 2012, along with an Addendum [ECF No. 34]. Based on U.S.S.G. § 2K2.1(a)(2), the probation officer calculated the Defendant's base offense level to be 24. (Final PSR ¶ 23, ECF No. 33.) The probation officer added an additional 4 levels to the base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B), possession of a firearm in connection with another felony offense, and an additional 2 levels pursuant to U.S.S.G. § 3C1.2, recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. (*Id.* ¶¶ 24, 27.) Applying a 3 level credit for acceptance of responsibility, the probation officer found that the Defendant's total offense level was 27. (*Id.* ¶ 32.) Based on a total offense level of 27 and a criminal history category of VI, the probation officer calculated the Defendant's guideline range to be 130 to 162 months of imprisonment. (*Id.* ¶ 82.)

On January 30, 2013, the Court held a hearing at which the parties presented evidence related to the sentencing factors set forth in 18 U.S.C. § 3553(a) . At the hearing, the Defendant discussed his objections to the Presentence Report's application of a 4 level enhancement for possession of a firearm in connection with another felony offense and a 2 level enhancement for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The Court directed the parties to file briefs in support of their respective positions if they were unable to reach an agreement regarding the resolution of these objections.

On February 26, 2013, the parties filed a Sentencing Stipulation [ECF No. 47], which the probation officer incorporated into a Second Addendum to the Presentence Report [ECF No. 53]

filed on April 24, 2013. Pursuant to the Stipulation, the parties agreed that the 4 level enhancement for possession of a firearm in connection with another felony offense should apply, but that the 2 level enhancement for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer should not apply. (Second Addendum, ECF No. 53.) Therefore, the probation officer calculated the Defendant's total offense level to be 25. (*Id.*) With a criminal history category of VI, the Defendant's guideline range would be 110-137 months. (*Id.*)

To support his request for a below the advisory Guidelines sentence, the Defendant filed a Sentencing Memorandum [ECF No. 48] and Amended Sentencing Memorandum [ECF No. 49] on March 28 and April 1 respectively. The Government Filed its Response in Opposition to Defendant's Sentencing Memorandum [ECF No. 50] on April 15, 2013. The issues are now fully briefed for the Court to resolve.

**B.**     **Guideline Calculation**

The Defendant pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pursuant to U.S.S.G. § 2K2.1(a)(2), the Defendant's base offense level is 24. The parties agreed that the 4 level enhancement for possession of a firearm in connection with another felony offense should apply, but that the 2 level enhancement for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer should not apply. (Second Addendum.) With his 3 level credit for acceptance of responsibility, the Defendant's total offense level is 25.

With a total offense level of 25 and a criminal history category of VI, the Defendant's

guideline sentencing range is 110-137 months imprisonment.

**C. § 3553(a) Variance**

In imposing a sentence, a court is obligated to consider the factors set forth in 18 U.S.C. § 3553(a). After considering these factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: just punishment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson v. United States*, 555 U.S. 350, 352 (2009); *Rita v. United States*, 551 U.S. 338, 351 (2007).

Having calculated the Defendant's guideline range, the Court now considers the Defendant's request for a below guidelines sentence. In the Defendant's view, a sentence of 84 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense while recognizing the significant changes the Defendant has made in his life since his commission of the instant offense. The Defendant emphasizes that he is a recovering meth addict who has been sober since his release from state custody in 2011; that has he is a loving and responsible father and husband; that he is willing and able to find steady employment; and that he no longer poses a threat to public safety.

The Government opposes the Defendant's request for a below guideline sentence. In the Government's view, a sentence at the low end of the guideline range is warranted. First, the Government emphasizes the seriousness of the instant offense. (Govt.'s Response in Opp. 5, ECF No. 50.) In support of this position, the Government recounts the facts underlying the

Defendant's conviction, noting that the Defendant committed theft at a Kroger grocery store, and fled from the vehicle transporting him with a bag containing evidence of methamphetamine production and the firearm at issue in the present case. (*Id.*) Further, the Government observes, the Defendant sold methamphetamine to a confidential informant on two separate occasions and, during his interview with the Bureau of Alcohol, Tobacco, and Firearms (ATF), admitted to cooking methamphetamine. (*Id.*)

Next, the Government cites the Defendant's criminal history as evidence of the Defendant's unwillingness or inability to lead a law-abiding life. (*Id.* 6.) Pointing to a long list of criminal convictions, the Government maintains that the Defendant has not worked to rehabilitate himself despite numerous opportunities to do so. (*Id.*) Specifically, the Government challenges the Defendant's assertion that he has successfully addressed his methamphetamine addiction. (*Id.*) At the § 3553(a) hearing, ATF Agent Skender testified that, following the Defendant's arrest on the instant charge, the Defendant admitted to smoking marijuana on multiple occasions while on state parole following his release from prison. (Govt.'s Response in Opp. 6 n.10.) The Government indicates that the Defendant's drug addiction began with the use of marijuana and advanced over time to the use of methamphetamine. (*Id.*)

In conclusion, the Government argues that the Defendant has repeatedly engaged in criminal behavior and drug use and that a sentence at the low end of the guideline range is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and deter future criminal conduct on the part of the Defendant. (*Id.* 6–7.)

1.  *Nature and Circumstances of the Offense*

The instant prosecution arose out of a gun and drug investigation conducted by the ATF with the assistance of a confidential informant (CI). (Final PSR ¶¶ 7-13, ECF No. 33.) On June 11-12, 2009, the CI arranged for two purchases of methamphetamine from the Defendant. (*Id.* ¶¶ 7–9.) During these transactions, the Defendant discussed owning a .25 caliber handgun and showed the gun to the CI. (*Id.* ¶¶ 8–9.) On June 16, 2009, the Defendant and CI traveled with two other individuals to a Kroger store in New Haven, Indiana. (*Id.* ¶ 10.) The Defendant entered the store and attempted to steal batteries at which time store employees started to chase him. (*Id.*) The Defendant ran out of the store and jumped into the waiting car, which sped out of the parking lot, striking another car in the process. (*Id.*) While fleeing from the store, an occupant of the vehicle threw a red backpack out of the car. (Final PSR ¶ 10.) At some point, the Defendant jumped out of the car and fled the scene. (*Id.*) Law enforcement officers responded to the report of the theft at the store and located the car in which the Defendant had traveled. (*Id.* ¶ 11.) Occupants of the vehicle reported that the red backpack belonged to the Defendant and that the backpack contained items to produce methamphetamine. (*Id.* ¶¶ 10–11.) As the police began to search for the Defendant, occupants of the vehicle described the firearm possessed by the Defendant. (*Id.* ¶ 11.) Officers recovered the red backpack thrown from the car, which contained the handgun described by the vehicle's occupants and evidence of methamphetamine production. (*Id.*) When the Defendant was eventually apprehended, he denied possessing a gun. (Final PSR ¶ 11.)

Although the events of the underlying offense occurred in June 2009, the Defendant was not arrested on the federal offense until March 29, 2012. (*Id.* ¶ 12.) At that time, ATF Special

Agent Skender interviewed the Defendant. (*Id.*) During the interview, the Defendant denied possessing the firearm at the time of the traffic stop but admitted to handling the firearm on several previous occasions. (*Id.*) The Defendant also conceded that he had been cooking methamphetamine several times a week in the months prior to June 2009. (*Id.*)

2.  *History and Characteristics of the Defendant*

The Defendant is 36 years old and has a significant criminal history, including a wide range of offenses for theft, resisting law enforcement, possession of drug paraphernalia, possession of a controlled substance, and breaking and entering. (*Id.* ¶¶ 34–128.) The Defendant was born in Fort Wayne, Indiana, and grew up in Butler, Indiana, with his biological parents. (Final PSR ¶ 160.) According to the Defendant, he was raised in a middle class neighborhood (*Id.* ¶ 161) and reported no abuse during his childhood, (*Id.* ¶ 163.) After divorcing his father, the Defendant's mother remarried; the Defendant reported having a good relationship with his mother and his step-father and both of his brothers. (*Id.*) The Defendant was previously married to Laura Schambers for six years. (*Id.* ¶ 162.) The couple had a son who the Defendant had regular contract with despite the divorce. (*Id.*) On May 17, 2012, the Defendant married Amanda Caudill. (Final PSR ¶ 165.) The Defendant and Caudill have one daughter together. (*Id.*) The Defendant has two other children from previous relationships. (*Id.* ¶ 165.)

The Defendant has a significant history of substance abuse dating to his teenage years. (*Id.* ¶¶ 170–72.) According to the Defendant, he frequently used marijuana and occasionally used powder and crack cocaine. (*Id.* ¶ 170–71.) The record indicates that the Defendant was addicted to methamphetamine for a period of more than 15 years. (*Id.* ¶ 170.) In his interview

7

with the Probation Officer, the Defendant stated that he stopped using drugs upon his incarceration on state charges in 2009. (Final PSR ¶ 170–71.) The Defendant advised that he completed a drug treatment program while incarcerated in Westville Correctional facility in 2011. (*Id.* ¶ 172.) A drug screen was administered at his interview resulting in a score of zero. (*Id.*)

3.   *Testimony at the § 3553(a) Hearing*

On January 30, 2013, the Court held an evidentiary hearing at which the Defendant's friends and family testified. The witnesses included: Amanda Schambers, the Defendant's wife; Logan Butler, the Defendant's brother-in-law; Viky Loucks, the Defendant's mother; Kenneth Loucks, the Defendant's step-father; Wendy Quinley, the mother of the Defendant's son Jordan; Tyler Schambers, the Defendant's brother; Bonnie Eidenier, the mother of the Defendant's niece; and the Defendant himself. The Government presented the testimony of ATF Special Agent Sean Skender. The witnesses testifying in support of the Defendant consistently testified that the Defendant had made significant changes in his life since his incarceration on state charges in 2009. Since his incarceration and subsequent release from prison in early 2011, the witnesses reported that the Defendant had not used narcotics and was no longer addicted to methamphetamine. Further, these witnesses stated that they had not seen or known the Defendant to possess any weapons. Although the Defendant historically relapsed upon release from prison, the witnesses emphasized that his relationship with Amanda and the birth of his daughter with Amanda had brought stability to his life following his release from state custody in early 2011. Following his release from state custody, the Defendant reportedly began to participate in family

events, take responsibility for his children, and worked to be a good father and husband while remaining sober.

In conclusion, the Defendant testified on his own behalf. (Hearing Tr. 68–76.) At the outset, the Defendant acknowledged his difficulties with substance abuse. (*Id.* 68–70.) The Defendant compared his previous record on parole with his record on parole since his release from state custody in early 2011:

> [A]ll the times I've been on parole and probation, I've had repeat violations, dirty drug tests, missed appointments. I've gotten arrested on new charges. This last time after I was released from prison, I had never had a single complaint from my parole officer. I never missed an appointment. All my drug tests were clean. It was the first time I was ever successfully discharged from any kind of probation or parole.

(*Id.* 70.) As further evidence of his changed behavior, the Defendant testified that he completed a drug treatment program while in prison and had no disciplinary problems during his incarceration. (*Id.* 71.) In addition, the Defendant noted that he had made positive changes in his life while in prison, including marrying his wife, getting baptized, and teaching a Bible study group. (*Id.*) In conclusion, the Defendant recognized his extensive criminal history, but emphasized that his drug addiction had motivated his past criminal behavior. (*Id.* 71–73.)

On cross-examination, the Government questioned the Defendant about his drug use since his arrest on state charges on June 16, 2009. (Hearing Tr. 76–77.) The Defendant testified that he had not use any controlled substances since his parole in January 2011. (*Id.* 77.) The Government asked the Defendant to recall his interview with ATF Special Agent Skender and whether the Defendant remembered admitting to using marijuana on several occasions since his release from prison in January 2011. (*Id.* 78.) The Defendant denied admitting drug use to Special Agent Skender. (*Id.*)

9

In response, the Government presented the testimony of Special Agent Skender. (*Id.* 79–84.) Special Agent Skender discussed the investigation the led to the federal charges against the Defendant. (*Id.* 80–81.) Following the Defendant's arrest, Special Agent Skender conducted an interview with the Defendant that was taped and recorded. (Hearing Tr. 82.) The camera was broken at the time of the interview so only the audio of the interview recorded properly. (*Id.*) However, the audio recording of the interview would not play on the United States Attorney's computer. (*Id.*) Consequently, Special Agent Skender testified as to the substance of the interview with the Defendant. (*Id.* 83–84.) Special Agent Skender reported that, contrary to the Defendant's testimony on cross-examination, the Defendant did admit to smoking marijuana on several occasions following his release from prison in January 2011. (*Id.* 83.)

On April 30, 2013, the Government filed an audio recording of Special Agent Skender's interview with the Defendant. In the interview, Special Agent Skender questioned the Defendant regarding his drug use following his release from state custody:

> SA Skender: When was the last time you used?
>
> Defendant: Meth?
>
> SA Skender: Yeah.
>
> Defendant: The day you guys arrested me . . . The day Allen County arrested me on these charges. So, June 16, 2008 . . . 2009.
>
> SA Skender: Have you used any other narcotics since you have been out?
>
> Defendant: I've smoked a little weed. I mean, not much. Maybe four of five times over the last year.

(Post-Arrest Interview 5:03–5:37, ECF No. 54.)

4. *Sentence*

With a total offense level of 25 and a criminal history category of VI, the Defendant's guideline sentencing range is 110-137 months imprisonment. Having reviewed the record in this case, the Court concludes that a below guidelines sentence is appropriate in this case considering the nature and seriousness of the offense and the Defendant's history and characteristics.

District courts are obligated to consider meritorious arguments in favor of mitigation at sentencing. *See United States v. Chapman*, 694 F.3d 908, 913–14 (7th Cir. 2012). Here, the Defendant presented evidence that he has made positive changes in his life since the commission of the crime at issue in this case, including: completing a drug treatment program while incarcerated in state custody from 2009 to early 2011; maintaining a commendable disciplinary record while incarcerated; avoiding the use of methamphetamine following his release from state custody on January 30, 2011; successfully completing his parole; and taking responsibility for the care and support of his wife and children prior to his arrest on the instant charges on March 29, 2012. The Court recognizes the Defendant's efforts to rehabilitate himself and become a positive, contributing member of society. In light of his rehabilitative efforts, the Court will grant the Defendant's request for a below guidelines sentence and sentence him to 98 months imprisonment.

The Court does not believe that the Defendant's request for a sentence of 84 months imprisonment is appropriate because of the nature and seriousness of the offense, his extensive criminal history, and his lack of truthfulness at the evidentiary hearing. Here, the Defendant pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Presentence Report indicates that the Defendant possessed the handgun in question while

11

regularly cooking methamphetamine. (Final PSR ¶¶ 7-13.) This is a serious crime. *See* 18 U.S.C. § 922(g) ("felons in possession of firearms are a threat to the safety of society"); *United States v. Henry*, 935 F.Supp. 24, 25 (D.D.C. 1996) (holding that defendant who was charged as a felon in possession of a firearm was a danger to the community). The Seventh Circuit has recognized the "heightened potential" for violence when firearms and drugs mix. *United States v. Dickerson*, 705 F.3d 683, 693 (7th Cir. 2013). Further, the Defendant has a significant criminal history as noted in the Presentence Report. Finally, as demonstrated by the audio recording of his post-arrest interview with Special Agent Skender, the Defendant was not forthcoming with information at the § 3553(a) hearing regarding his use of marijuana following his release from state custody in 2011.

Considering the parties' arguments and the § 3553(a) factors, the Court finds that a sentence of 98 months imprisonment is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). Accordingly, the Court will sentence the Defendant to 98 months imprisonment at the time of the sentencing hearing set for May 22, 2012, at 11:30 A.M.

SO ORDERED May 20, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT